UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

MICHAEL M.,

                          Plaintiff,

v.                                                          5:17-CV-1038 (ATB)

COMM'R OF SOC. SEC.,

                          Defendant.

_____

APPEARANCES:                                    OF COUNSEL:

CONBOY, MCKAY, BACHMAN & KENDALL, LLP      PETER L. WALTON, ESQ.
Counsel for Plaintiff
407 Sherman Street
Watertown, NY 13601-9990

U.S. SOCIAL SECURITY ADMIN.                    KRISTINA D. COHN, ESQ.
OFFICE OF REG'L GEN. COUNSEL
REGION II
Counsel for Defendant
26 Federal Plaza - Room 3904
New York, NY 10278

ANDREW T. BAXTER, United States Magistrate Judge


## DECISION and ORDER

        Currently before the Court, is this Social Security action filed by Michael M. ("Plaintiff")

against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to

42 U.S.C. § 405(g).  This matter was referred to me, for all proceedings and entry of a final

judgment, pursuant to N.D.N.Y. General Order No. 18, and in accordance with the provisions of

28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1 and the consent of the parties.

(Dkt. Nos. 3, 4.)  The parties have each filed briefs (Dkt. Nos. 9 and 10), addressing the

administrative record of the proceedings before the Commissioner (Dkt. No. 6.)[1]  For the reasons

set forth below, the Commissioner's decision is AFFIRMED, and Plaintiff's complaint is

DISMISSED.

## I.      RELEVANT BACKGROUND

### A.      Factual Background

Plaintiff was born in 1966, making him 49 years old at the time of the ALJ's decision.

Plaintiff reported obtaining a GED and completing a semester of college.  Plaintiff has past work

as a truck driver and route supervisor.  Plaintiff has generally alleged disability due to herniated

discs with lower back pain, depression, Dupuytren's contractures, high cholesterol, and high

blood pressure.

### B.      Procedural History

Plaintiff applied for disability insurance benefits on March 10, 2009, and he was found to

be disabled as of September 24, 2007.  (T. 14, 63, 156-60.)  On June 17, 2014, it was

administratively determined that Plaintiff was no longer disabled as of that date, due to medical

improvement.  (T. 43, 64-69.)  This determination was upheld on reconsideration, and Plaintiff

timely requested a hearing before an Administrative Law Judge ("ALJ").  (T. 103-04.)  Plaintiff

appeared at a hearing before ALJ Marie Greener on February 10, 2016.  (T. 41-62.)  On March

30, 2016, the ALJ issued a written decision finding Plaintiff was not disabled.  (T. 11-40.)  On

July 31, 2017, the Appeals Council denied Plaintiff's request for review, making the ALJ's

decision the final decision of the Commissioner.  (T. 1-6.)

---

[1] The Administrative Transcript is found at Dkt. No. 6.  Citations to the Administrative
Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein
will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing
system.

### C.    The ALJ's Decision

In her decision, the ALJ made the following findings of fact and conclusions of law.  (T. 16-34.)  The ALJ found that the most recent favorable medical decision finding Plaintiff was disabled was the determination dated June 30, 2009, known as the comparison point decision ("CPD").  (T. 16.)  The ALJ then determined that, at the time of the CPD, Plaintiff had medically determinable impairments of degenerative disc disease ("DDD") of the cervical and lumbar spine, Dupuytren's contractures of his fingers/hands, and obesity, which were found to result in the residual functional capacity ("RFC") for sedentary work with additional, exertional, postural, and manipulative limitations.[2]  (T. 16, 63, 90, 433-39.)  The ALJ found that, at all times relevant to her decision, Plaintiff was not engaged in substantial gainful activity.  (T. 16.)  The ALJ concluded that the medical evidence established that Plaintiff did not develop any additional impairments after the CPD through June 17, 2014, and that the medical evidence established that after the CPD, Plaintiff had medically determinable severe impairments including DDD of the cervical and lumbar spine and obesity.  (T. 17-20.)  The ALJ then determined that Plaintiff's Dupuytren's contractures of his hands/fingers was no longer medically severe after the CPD.  (*Id.*)

The ALJ found that since June 17, 2014, Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (T. 21-22.)  Specifically, the ALJ considered Listings 1.02 (major dysfunction of a joint), 1.04 (disorders of the spine), 1.00 (musculoskeletal impairments), 3.00 (respiratory impairments), 11.00 (neurological disorders),

---

[2] The ALJ noted that there were no mental limitations identified at the CPD.  (T. 16, 63, 90, 433-39.)

and 14.00 (impairments of the immune system), including 14.09 (inflammatory arthritis). (*Id.*) The ALJ then determined that medical improvement occurred as of June 17, 2014. (T. 22.) The ALJ found that, as of June 17, 2014, Plaintiff had the RFC to perform light work with additional non-exertional environmental restrictions indicating that Plaintiff "should avoid concentrated exposure to smoke, fumes, odors, dusts, gases, poor ventilation, and other respiratory irritants with 'concentrated exposure' defined as an excessive amount." (*Id.*) The ALJ further determined that Plaintiff's medical improvement was related to the ability to work because it resulted in an improvement in his RFC. (T. 32.) The ALJ found that, as of June 17, 2014, Plaintiff's DDD of the cervical and lumbar spine and obesity were severe impairments. (*Id.*) The ALJ then determined that, as of June 17, 2014, that Plaintiff was unable to perform past relevant work. (*Id.*) Finally, the ALJ found that Plaintiff was capable of performing other jobs existing in significant numbers in the national economy. (T. 33-34.) The ALJ therefore concluded that Plaintiff was not disabled. [3]

### D.     The Parties' Briefs

#### 1.     Plaintiff's Brief

In his brief, Plaintiff argues that the ALJ failed to properly assess the severity of his Dupuytren's contractures. (Dkt. No. 9, at 16-18.) Specifically, Plaintiff argues that this condition should have been found severe by the ALJ (as it was when Plaintiff was initially determined to be disabled in 2009) and notes that it cannot be cured but requires repeated surgical treatment. (*Id*. at 17.) Plaintiff also argues that the ALJ's error in failing to find

---

[3] Plaintiff's counsel advises that Plaintiff was notified, on November 16, 2017, that he was approved for benefits, based on a subsequent application, and was determined to be disabled beginning on June 29, 2016, when he turned age 50.

Dupuytren's contractures severe was not harmless, because the ALJ clearly did not consider the limitations caused by this impairment in determining Plaintiff's RFC. (*Id.* at 18.)

Plaintiff also argues the ALJ erred in determining that he made medical improvement. (*Id.* at 18-21.) Specifically, Plaintiff argues that the ALJ neither identified nor cited specific medical evidence of Plaintiff's impairments as they existed when he was found to be disabled in 2009. Plaintiff contends that the ALJ's decision "fixated" on perceived improvement in his Dupuytren's contractures without citing objective medical evidence that "this condition has gone away." Instead, the ALJ infers from the medical evidence that the condition no longer bothers plaintiff. (T. 20.) Plaintiff argues the ALJ completely overlooked the disabling nature of Plaintiff's back problems, which served as the basis for the CPD, and did not compare his back problems from the time of the prior disability determination to his present condition. (*Id.*) Plaintiff contends that the ALJ improperly considered her finding with respect to Plaintiff's current RFC as evidence of a medical improvement, when the RFC assessment should be made only after a determination that plaintiff's condition has medically improved. (*Id.* at 20-21.)

Plaintiff also argues that the ALJ failed to properly evaluate and weigh the medical opinions of record by giving little weight to the opinions of Plaintiff's primary treating orthopedic physician, Bruce Baird, M.D., and his physician's assistant, Michael McElheran, while affording great weight to the opinion of consultative examiner, Elke Lorensen, M.D. (*Id.* at 21-24.) Plaintiff notes that Dr. Baird's treatment records and recommendation for surgery were the basis for Plaintiff's initial disability determination, and that Dr. Baird's recent assessment of Plaintiff's ability to function was based on this long treatment history. (*Id.* at 22.) Plaintiff also notes that Dr. Baird concluded there was no medical improvement in Plaintiff's condition, and that the ALJ's reasons for affording little weight to this opinion--a significant gap

in treatment—missed the point that Plaintiff had reached maximum medical improvement. (*Id*. at 22-23.) Plaintiff additionally argues that there was no basis for the ALJ's conclusion that a physical therapist's test results from a formal work capacity evaluation--indicating that Plaintiff could lift no more than nine pounds and occasionally sit, stand, and walk--appeared to be based primarily on Plaintiff's subjective self-reports. (*Id*. at 23.) Plaintiff argues that Dr. Baird's opinion was supported by these formal test results, as well as Plaintiff's significant MRI findings. (*Id*.) Plaintiff further contends that the ALJ failed to support her conclusion that this treating source's medical opinion was not well-supported, and argues, instead, that this opinion should have been given controlling weight. (*Id*. at 23-24.)

Finally, Plaintiff argues that the ALJ failed to properly assess his RFC. (*Id*. at 24-27.) Plaintiff contends that the ALJ's reliance on Plaintiff's physical activities was misplaced as these activities do not support the conclusion that Plaintiff is capable of performing work consistent with the ALJ's RFC determination. (*Id*. at 25-26.) Plaintiff also contends that Dr. Lorensen's opinion, upon which the ALJ purported to rely, indicated moderate limitations, which did not allow the ALJ to infer that Plaintiff was capable of performing the exertional requirements of light work, particularly given his radiographic findings and findings on examination. (*Id*. at 26-27.) Plaintiff argues that the ALJ improperly engaged in her own evaluation of the medical findings in the absence of a supporting expert medical opinion, and set her own expertise against that of Dr. Baird in making her light work RFC determination. (*Id*. at 27.)

## 2. Defendant's Brief

Defendant argues that the ALJ properly evaluated the severity of Plaintiff's Dupuytren's contractures. (Dkt. No. 10, at 8-10.) Defendant contends that Plaintiff fails to point to any medical evidence indicating his Dupuytren's contractures imposed any functional limitations in

basic work-related activities, and that evidence--including treatment notes, disability reports, and Plaintiff's testimony--showed that his hand condition had improved since the CPD. (*Id*.) Defendant points to Dr. Baird's opinion in September 2014 that Plaintiff had no difficulty with fine manipulation and motor skills in the upper extremities, and the findings of a State agency medical consultant, Dr. P. Seitzman, that Plaintiff had no manipulative limitations. (*Id*. at 9.) Defendant also argues that even if Plaintiff's Dupuytren's contractures should have been found severe, any error in the ALJ's analysis is harmless error that was cured where the ALJ found other severe impairments and proceeded with the sequential analysis. (*Id*. at 10.)

Defendant argues that the ALJ properly found medical improvement. (*Id*. at 10-13.) Defendant notes Plaintiff's examination findings since the CPD have shown a steady improvement in his back condition, and that substantial evidence shows medical improvement of his Dupuytren's contractures. (*Id*. at 11-12.) Defendant also notes that Plaintiff has continued to perform a range of activities that require postural and manipulative demands. (*Id*. at 12.) Defendant argues that the ALJ properly determined medical improvement had occurred as of June 17, 2014, and thereafter determined Plaintiff's RFC. (*Id*. at 13.)

Defendant argues the ALJ properly evaluated the medical opinions of record in determining Plaintiff's RFC. (*Id*. at 13-18.) Specifically, Defendant argues the ALJ properly afforded little weight to Dr. Baird's opinions from January 2011, September 2014, and May 2015, as well as that of physical therapist ("PT") Wendy Alford-Tousley, because these opinions were inconsistent with the record evidence including treatment notes. (*Id*. at 14-15.) Defendant also contends the ALJ was not required to evaluate every factor contained in the regulations to explain why he rejected Dr. Baird's opinion. (*Id*. at 15-16.)

Defendant argues the ALJ properly afforded great weight to Dr. Lorensen's opinion as it was consistent with the doctor's findings and the objective findings of record from other sources. (*Id*. at 16.) Defendant also contends the ALJ reasonably found that Dr. Lorensen's opinion of some moderate limitations was consistent with light work. (*Id*. at 16-17.) Defendant additionally argues that Dr. Seitzman's opinion also supports the ALJ's RFC finding. (*Id*. at 17.)

Finally, Defendant argues that the ALJ did not substitute her own judgment for competent medical opinions, but rather properly reviewed the evidence of record to reach the RFC for light work. (*Id*. at 17-18.)

## II. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See, e.g., Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian*, 708 F.3d at 417 (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides,

because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.      Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases

previously discussed, the claimant bears the burden of the proof as
to the first four steps, while the [Commissioner] must prove the final
one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146,

150 (2d Cir. 2014).  "If at any step a finding of disability or non-disability can be made, the SSA

will not review the claim further."  *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

### C.      Standard for Termination of Benefits

The regulations provide that after the Commissioner makes a finding of disability, this

finding is evaluated "from time to time"[1] to determine if the claimant is still eligible.  *See* 42

U.S.C. § 423(f); 20 C.F.R. §§ 404.1590, 404.1589.  To determine whether a claimant's disability

has ended, the Commissioner has developed a multi-step[2] analysis, known as the "Continuing

Disability Review" ("CDR") process.  20 C.F.R. § 404.1594(f).  Termination of benefits may

occur when there is substantial evidence to show that a "medical improvement" ("MI") restores

the recipient's ability to work. *Deronde v. Astrue*, No. 7:11-CV-998 (ESH), 2013 WL 869489, at

*2 (N.D.N.Y. Feb. 11, 2013) (citing inter alia 20 C.F.R. § 1594; *Veino v. Barnhart*, 312 F.3d

578, 586 (2d Cir. 2003) (Rep't-Rec.), *adopted*, 2013 WL 868076, N.D.N.Y., Mar. 7, 2013).  The

multi-step analysis is as follows:

(1)      Is the plaintiff engaging in substantial gainful activity ("SGA").  If so, the
Commissioner will find that the disability has ended.

---

[1] Section 404.1590 provides when, and how often, the Commissioner will conduct this evaluation.

[2] Section 1594 is entitled "How we will determine whether your disability continues or ends,"
and the section contains a lengthy discussion of how the Commissioner periodically reviews
favorable disability determinations for medical improvement ("MI").  The section includes
definitions of various terms, together with examples. *See* 20 C.F.R. § 1594(b)(1)-(b)(7).  The
evaluation steps referred to above are listed in section 1594(f).

(2)     If not, the Commissioner determines whether the plaintiff has an impairment or combination of impairments which meets or equals the severity of an impairment listed in Appendix 1 of Part 404 ("Listed Impairment).  If so, the disability will continue.

(3)     If not, the Commissioner determines whether there has been MI as defined in 20 C.F.R. § 404.1594(b)(1).

(4)     If there has been MI, the Commissioner determines whether the MI is related to the plaintiff's ability to work under 20 C.F.R. § 404.1594(b)(1) through (b)(4).

(5)     If there has been no MI, or the MI is not related to the plaintiff's ability to work, the Commissioner determines if any of the "exceptions"[3] in paragraphs (d) and (e) apply.

(6)     If there has been MI or one of the first group of exceptions to MI applies, the Commissioner will determine whether all the plaintiff's current impairments are "severe."

(7)     If plaintiff's impairments are severe, then the Commissioner will assess the plaintiff's RFC, based on all the current impairments, and determine whether the plaintiff can perform his or her prior work.  If so, disability will cease.[4]

(8)     If the plaintiff cannot perform his or her prior work, then the Commissioner will consider whether the plaintiff can perform other work in the national economy, based upon the plaintiff's age, education, and past work experience.  If so, disability will cease.  If not, disability will continue.

---

[3] There are two groups of "exceptions" to the requirement for MI. 20 C.F.R. 404.1594(d) and (e).  These exceptions allow the Commissioner to terminate benefits even if there has been no MI.  The first group of exceptions deal with the availability of advances in medical or vocational therapy, related to a claimant's ability to work (§ 404.1594(d)(1)); substantial evidence that the plaintiff has undergone vocational therapy related to his or her ability to work (§ 404.1594(b)(2)); new or improved diagnostic techniques show that the claimant's impairment was not as disabling as it was considered at the time of the most recent favorable decision (§ 404.1594(d)(3)); substantial evidence demonstrates that the most recent favorable decision was made in error (§ 404.1594(d)(4)); or plaintiff is currently engaging in SGA and is not entitled to a trial work period pursuant to section 404.1592.  The second group of exceptions to the necessity for MI include whether a prior favorable determination was obtained fraudulently (§ 404.1594(e)(1)); plaintiff fails to cooperate pursuant to section 404.911 (§ 404.1594(e)(2)); the Commissioner is unable to find the plaintiff (§ 404.1594(e)(3)); or the plaintiff fails to follow prescribed treatment which would be expected to restore his or her ability to perform SGA (§ 404.1594(e)(4)).  The ALJ found that "[n]one of the exceptions to the medical improvement standard apply in this case."  (T. 32)

[4] This regulation also provides that if there is insufficient evidence of a plaintiff's past relevant work to make the determination under this subsection, the Commissioner will proceed to the final step of the analysis. 20 C.F.R. § 404.1594(f)(9).

*See Deronde*, 2013 WL 869489 at *2 n.8 (citing 20 C.F.R. § 404.1594(f)(1)-(f)(8)).  These steps are intended to assure that the review of disability cases is conducted in a uniform manner, and that "any decisions to stop disability benefits are made objectively, neutrally and are fully documented." *Deronde*, 2013 WL 869489 at *2 (quoting 20 C.F.R. § 404.1594(f)).  If the Commissioner reaches the final step, the Commissioner has the limited burden to show that there is other work that the plaintiff can perform in the national economy. *See* 20 C.F.R. § 404. 1594(b)(5) ("[i]n most instances, *we must show* that you are able to engage in [SGA] before your benefits are stopped." (emphasis added)).

## III.    ANALYSIS

### A.    Substantial Evidence Supports the ALJ's Analysis of the Severity of Plaintiff's Impairments

A severe impairment is one that significantly limits a plaintiff's physical and/or mental ability to do basic work activities.  *See* 20 C.F.R. § 404.1520(c).  Basic work activities include walking, standing, sitting, lifting, carrying, pushing, pulling, reaching, handling, seeing, hearing, speaking, understanding, remembering and carrying out simple instructions, using judgment, and responding appropriately to supervision, co-workers, and usual work situations.  *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (citing *Gibbs v. Astrue*, 07-CV-10563, 2008 WL 2627714, at *16 (S.D.N.Y. July 2, 2008); 20 C.F.R. §§ 404.1521(b)(1)-(5)).  "Although the Second Circuit has held that this step is limited to 'screening out *de minimis* claims,' [] the 'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, by itself, sufficient to render a condition severe." *Taylor*, 32 F. Supp. 3d at 265 (quoting *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995); *Coleman v. Shalala*, 895 F. Supp. 50, 53 (S.D.N.Y. 1995)).  Overall, the claimant retains the burden of

presenting evidence to establish severity. *Id*. (citing *Miller v. Comm'r of Soc. Sec.*, 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008)).

This Court has indicated the failure to find a specific impairment severe is harmless where the ALJ concludes (a) there is at least one other severe impairment, (b) the ALJ continues with the sequential evaluation, and (c) the ALJ provides explanation showing she adequately considered the evidence related to the impairment that is ultimately found non-severe. *Fuimo v. Colvin*, 948 F. Supp. 2d 260, 269-70 (N.D.N.Y. 2013) (citing *Dillingham v. Astrue*, 09-CV-0236, 2010 WL 3909630 (N.D.N.Y. Aug. 24, 2010) (Rep't-Rec.), *adopted*, 2010 WL 3893906 (N.D.N.Y. Sept. 30, 2010)); *Tryon v. Astrue*, No. 5:10-CV-537, 2012 WL 398952, at *3 (N.D.N.Y. Feb. 7, 2012).

In this case, The ALJ found that, after the CPD, Plaintiff's DDD of the cervical and lumbar spine and obesity were severe impairments, while the Dupuytren's contractures of his fingers/hands were no longer medically severe. (T. 17.) Plaintiff argues that the ALJ failed to properly assess the severity of his Dupuytren's contractures. (Dkt. No. 9, at 16-18.) The Court finds this argument unpersuasive for the following reasons.

The ALJ's overall decision indicates that she carefully considered the severity of Plaintiff's various alleged impairments. The ALJ indicated that Plaintiff's Dupuytren's contractures were among several non-severe impairments that were only slight abnormalities and had no more than a minimal effect on Plaintiff's ability to work since the CPD, before going on to discuss this specific impairment in detail. (T. 17-18, citing 20 C.F.R. §§ 404.1520a(d)(1), 404.1521 and Social Security Rulings ("SSRs") 85-28, 96-3p, and 96-4p.))

The ALJ adequately considered Plaintiff's Dupuytren's contractures (noting they were found severe at the CPD) based on the evidence related to this impairment. (T. 17-18, 63, 90,

13

238-43, 433-39, 572-79, 581.) For example, the ALJ noted that Plaintiff received no specific ongoing treatment or monitoring of this impairment, indicating no more than slight or minimal limitations of functioning. (T. 18.) The ALJ acknowledged notations in the medical reports that contractures limited Plaintiff's grasp and resulted in decreased grip strength. (T. 573, 579 (1/23/2015).) However, other physical examinations showed full grip strength in Plaintiff's upper extremities with intact hand and finger dexterity. (S*ee, e.g.*, T. 469 (5/1/2014); 593 (6/19/2015).) The ALJ concluded that these findings demonstrated overall improvement from the June 2009 findings that Plaintiff had only 3/5 grip strength, and that his hand and finger dexterity were not intact. (T. 18, 27, 431.) The ALJ also noted that Plaintiff acknowledged, in an undated disability report and a March 2014 function report, that he did not have difficulty using his hands or fingers. (T. 18, 223, 229-30.)

The ALJ further supported her finding regarding Dupuytren's contractures by assessing the opinion evidence relating to this impairment. (T. 17-18.) The ALJ afforded little weight to PT Alford-Tousley's assessment--indicating significant exertional and manipulative limitations related to Plaintiff's Dupuytren's contractures--noting it was not well-supported by the record. (T. 17, 572-79.) Although the ALJ afforded little weight to the medical opinion of Plaintiff's treating orthopedic surgeon, she noted that Dr. Baird determined, in September 2014, that Plaintiff had an unlimited ability to reach, handle, finger, or feel. (T. 18, 534.)

In any event, the Court finds that any error by the ALJ in failing to find Plaintiff's Dupuytren's contractures to be severe would be harmless because the ALJ did find at least one other severe impairment, and continued with the sequential evaluation. *Fuimo*, 948 F. Supp. 2d at 269-70; *Reices-Colon v. Astrue*, 523 F. App'x at 798. Contrary to Plaintiff's argument that the ALJ clearly did not consider Plaintiff's limitations caused by this impairment in determining his

RFC, the ALJ stated that any remaining radicular complaints affecting Plaintiff's upper extremities had been considered in connection with his severe spine disorders and obesity, which were found severe. (T. 18.) The ALJ also discussed Plaintiff's alleged "limitations in reaching, handling, fingering, feeling, or using his upper extremities secondary to the combination of his impairments" in connection with his RFC analysis. (T. 27, 28-29.)

In sum, the Court concludes that substantial evidence supports the ALJ's finding that Plaintiff's Dupuytren's contractures were not severe, or that any error in this finding was harmless. Remand is therefore not required on this basis.

**B.      Substantial Evidence Supports the ALJ's Analysis of Plaintiff's Medical Improvement**

"Medical improvement" is defined as

> Medical improvement is any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled. A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s) . . .

20 C.F.R. § 404.1594(b)(1). The Commissioner must compare the current medical severity of plaintiff's impairment to the severity of that impairment at the time of the most recent favorable decision. *Douglass v. Astrue*, 496 Fed. App'x 154, 155 (2d Cir. 2012) (citing *Veino*, 312 F.3d at 586-87.) This concept is referred to as the "point of comparison." 20 C.F.R. § 404.1594(b)(7).

Under the "continuing disability review" standard, the burden of demonstrating medical improvement relating to the claimant's ability to perform work "rests with the Commissioner at every step." *DeRonde v. Astrue*, 11-CV-0998, 2013 WL 869489, at *3 (N.D.N.Y. Feb. 11, 2013) (citing 20 C.F.R. § 404.1594(f)(1)-(8); *Chavis v. Astrue*, 07-CV-0018, 2010 WL 624039, at *4 (N.D.N.Y., Feb. 18, 2010); *Abrams v. Astrue*, 06-CV-0689, 2008 WL 4239996, at *2 (N.D.N.Y.

15

Sept. 12, 2008)).  However, even though the burden rests with the Commissioner, a claimant's benefits may be terminated so long as "there is substantial evidence demonstrating a 'medical improvement' which enables the individual to engage in substantial gainful activity." *Baker v. Comm'r of Soc. Sec.*, 12-CV-1715, 2014 WL 1280306, at *4 (N.D.N.Y. Mar. 27, 2014) (quoting *Matice v. Comm'r of Soc. Sec.*, 99-CV-1834, 2004 WL 437472, at *3 (N.D.N.Y. Feb. 11, 2004)). "[T]he Commissioner has the burden of persuasion in showing that [medical improvement] has occurred." *Brown v. Colvin*, 14-CV-725, 2015 WL 4488670, at *5 (N.D.N.Y. July 22, 2015) (citing *Abrams v. Astrue,* 06-CV-689, 2008 WL 4239996, at *2 (W.D.N.Y. Sept. 12, 2008); *Lopez v. Barnhart,* 05-CV-19, 2006 WL 1272644, at *2 n. 2 (D. Conn. Mar. 1, 2006)) (internal citations omitted).

Here, the ALJ found that medical improvement occurred as of June 17, 2014.  (T. 22.) The ALJ indicated that medical evidence supported a finding that there had been a decrease in the medical severity of the impairments, Plaintiff's Dupuytren's contractures of his fingers/hands were no longer a severe impairment, and his RFC was less restrictive than the prior findings at the CPD.  (*Id.*)

Plaintiff argues the ALJ erred in determining that a medical improvement occurred because she failed to identify or cite specific medical evidence of Plaintiff's impairments as they existed when he was found to be disabled in 2009.  Plaintiff asserts that the ALJ instead referenced a June 2009 RFC prepared by consultative examiner Dr. Toor and disregarded Plaintiff's orthopedic surgeon, the Workers' Compensation doctor, and another orthopedic surgeon detailing plaintiff's prior condition.  Plaintiff further argues that the ALJ failed to provide detail regarding her finding Plaintiff had a decrease in the medical severity of his impairments, and overlooked the disabling nature of Plaintiff's back problems, which served as

the basis for the CPD.  Finally, Plaintiff argues that the ALJ did not compare his back problems from the time of the prior disability determination to his present condition, and improperly considered her determination of Plaintiff's current RFC as evidence of medical improvement. (Dkt. No. 9, at 18-21.)  The Court finds these arguments unpersuasive for the reasons below.

While the ALJ's discussion immediately following her medical improvement finding is indeed brief (T. 22), her overall decision indicates adequate consideration of Plaintiff's medical improvement.  (T. 17-18, 22-32.)  The ALJ's analysis of the evidence supports her finding regarding medical improvement even though such analysis is not included in the medical improvement section of the opinion.  *See, e.g.*, *Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 112 (2d Cir. 2010) ("the absence of an express rationale for an ALJ's conclusions does not prevent us from upholding them so long as we are 'able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence.'") (citing *Berry v. Schweiker*, 675 F.2d at 469).

As documented in section III B., above, the ALJ marshaled substantial evidence that there was medical improvement with respect to Plaintiff's Dupuytren's contractures by discussing the relevant medical evidence in a prior section of her decision addressing whether that impairment continued to be severe.  (T. 17-18.)  While Plaintiff continued to suffer from that impairment between 2009 and 2014, the medical evidence reflected an improvement in his symptoms and the functionality of his hands during an extended period where surgery or other treatment was not required.

Similarly, the ALJ's discussion of Plaintiff's back impairments, in connection with her RFC analysis (T. 22-32), supports the determination that there was medical improvement with respect to plaintiff's DDD.  While the Court will discuss the ALJ's RFC analysis in detail in the

17

next section, I will highlight some of the evidence the ALJ cited that supports a finding of medical improvement with respect to Plaintiff's back impairments.

The ALJ noted that, at the time of the CPD, Plaintiff was recommended for surgery. However, Plaintiff had yet to undergo surgery, either during or following a nearly four-year period when he was no longer being treated by specialists or having physical therapy, and he was pursuing only conservative treatment, often with only over-the-counter pain medication. (T. 23-24, 234, 281, 518, 529-30, 531, 573, 641, 642.) Plaintiff's ultimate decision to forego surgery may have been based on his doctors' advice regarding possible complications,[4] and his cessation of certain more aggressive treatment options from specialists may have resulted from medical issues or a lack of success.[5] However, the gap in Plaintiff's seeking intervention from specialists and his reliance solely on conservative treatment supports a finding that his back condition improved. *See, e.g., Kennedy v. Colvin*, No. 14-CV-6397P, 2015 WL 5510818, at *9-10 (W.D.N.Y. Sept. 17, 2015) (in finding that claimant experienced a medical improvement, ALJ properly relied upon the lack of abnormal findings on examination other than tenderness in the back and lower extremities and the relatively conservative treatment with prescriptions for ibuprofen and gabapentin) (citing *Newbold v. Colvin,* 718 F.3d 1257, 1263-65 (10th Cir. 2013) (ALJ properly relied upon, inter alia, a gap in treatment and conservative treatment, in concluding that claimant experienced medical improvement).

---

[4] Plaintiff' surgery was delayed for various medical reasons, but he ultimately opted not to proceed when advised that he faced only a 60% success rate based on his obesity and smoking. (T. 518, 529-30, 642.)

[5] For example, Plaintiff reportedly stopped lumbar epidural steroid injections because of pain and allergic reaction. (T. 529, 641.)

The diagnostic imaging of plaintiff's lumbar spine on various occasions between his CPD and June 17, 2014 reflect little change (T. 379-80, 607-08) or some increase in degenerative changes (T. 26-27, 596.) While recognizing this, the ALJ documented that, although plaintiff presented with increased subjective symptoms such as tenderness and pain since the CPD, subsequent clinical findings indicated overall improvement in his condition. (T. 27.) For example, "[p]revious findings for positive straight leg raising tests in 2009 . . . are not seen in later-dated exams."[6] (T. 27, 431, 469, 529, 602, 605.) Examinations by plaintiff's primary care physician in June 2014 and June 2015 indicated that plaintiff had a "full, smooth, and symmetric" range of motion (T. 583, 593) compared to findings in June 2009 and July 2010 that plaintiff had significant limits on range of motion in the lumbar spine (T. 431, 641.) (T. 27.)[7] Notwithstanding plaintiff's continuing subjective complaints regarding back pain symptoms, the medical evidence of improving symptoms provided substantial evidence supporting a finding of medical improvement in his DDD. *See Kennedy*, 2015 WL 5510818 at *9 (citing, inter alia, *Baker v. Comm'r of Soc. Sec.*, 2014 WL 1280306, *7 (N.D.N.Y.2014) (medical improvement in plaintiff's lumbar spine was supported by substantial evidence, including treatment notes documenting decreased symptoms and normal examination findings)).

---

[6] "The Straight Leg Raising (SLR) test has been used as the primary test to diagnosis lumbar disc herniations . . . ." Majlesi J, Togay H, Unalan H, Toprak S., *The sensitivity and specificity of the Slump and the Straight Leg Raising tests in patients with lumbar disc herniation*, http://www.ncbi.nlm.nih.gov/pubmed/18391677 .

[7] Compared to the consultative examination in 2009 by Dr. Toor, Dr. Lorensen found, in May 2014, that Plaintiff had greater range of motion in lumbar spine flexion and extension, but slightly lesser range of motion for lateral flexion and rotation.

Although the ALJ could have relied solely on improvement in Plaintiff's symptoms to find medical improvement,[8] she also closely evaluated the medical opinion evidence on this issue. Dr. Lorensen, a consultant who examined Plaintiff in May 2014 and reviewed X-rays of his lumbar and cervical spine, opined that Plaintiff had "no gross limitations as to sitting, standing, walking, or handling small objects" and "moderate limitations to bending, lifting, and reaching." (T. 467-70.) The consultant who examined Plaintiff in June 2009 had a much more restrictive opinion, finding that Plaintiff had "moderate limitation standing, walking, sitting" and "moderate to severe limitation bending or heavy lifting." (T. 429-32) As discussed in detail in the following section, the ALJ also evaluated, and accorded limited weight to, the opinion evidence from Plaintiff's orthopedic surgeon who met with Plaintiff for 15 minutes in September 2014, and found "no reason to believe that Plaintiff has any improvement since his previous visit [four years earlier]." As discussed further in the following section, the Court finds that the ALJ did not err in resolving the conflicting medical opinion evidence with respect to Plaintiff's symptoms and limitations.

In sum the ALJ's analysis at various other steps of the sequential disability analysis marshals substantial evidence that also sustains the ALJ's finding with respect to Plaintiff's medical improvement. Remand is therefore not required on this basis.

### C. Substantial Evidence Supports the ALJ's Analysis of the Opinion Evidence and Plaintiff's RFC

Residual functional capacity ("RFC") is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained

---

[8] *See Kennedy*, 2015 WL 5510818 at *10 (the applicable regulations provide that medical improvement determinations may be made upon improvement of a claimant's symptoms as reflected in treatment records) (citing *Newbold v. Colvin,* 718 F.3d at 1263-64 ("medical improvement may be found based on improvement in symptoms alone")).

work activities in an ordinary work setting on a regular and continuing basis. . . ." *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)). In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R §§ 404.1545, 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)). An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities. *Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183; *Sullivan v. Secretary of HHS*, 666 F. Supp. 456, 460 (W.D.N.Y. 1987)). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Trail v. Astrue*, No. 5:09-CV-1120, 2010 WL 3825629 at *6 (N.D.N.Y. Aug. 17, 2010) (citing Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7).

The Second Circuit has long recognized the 'treating physician rule' set out in 20 C.F.R. § 404.1527(c). "'[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)). However, " . . . the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued

opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).

In deciding how much weight to afford the opinion of a treating physician, the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'" *Greek*, 802 F.3d at 375 (quoting *Selian*, 708 F.3d at 418). However, where the ALJ's reasoning and adherence to the regulation is clear, and it is obvious that the "substance of the treating physician rule was not traversed," no "slavish recitation of each and every factor" of 20 C.F.R. § 404.1527(c) is required. *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (citing *Halloran,* 362 F.3d at 31-32). The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant replacing the consideration of the treatment relationship between the source and the claimant. 20 C.F.R. §§ 404.1527(c)(1)-(6).

"An ALJ should consider 'all medical opinions received regarding the claimant.'" *Reider v. Colvin*, 15-CV-6517P, 2016 WL 5334436, at *5 (W.D.N.Y. Sept. 23, 2016) (quoting *Spielberg v. Barnhart*, 367 F. Supp. 2d 276, 281 (E.D.N.Y. 2005)). "The ALJ is not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion." *Greek*, 802 F.3d at 375 (citing *Burgess*, 537 F.3d at 131). In assessing a plaintiff's RFC, an ALJ is entitled to rely on opinions from both examining and non-examining State agency medical consultants because such consultants are qualified experts in the field of social security disability. *See Frye ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) (summary order) ("The report of a State agency medical consultant constitutes

expert opinion evidence which can be given weight if supported by medical evidence in the record."); *Little v. Colvin*, 14-CV-0063, 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.") (internal quotation marks omitted).

In this case, the ALJ found that Plaintiff has the RFC to perform light work with additional non-exertional environmental restrictions. (T. 22.) In so doing, the ALJ considered the evidence of record including the medical opinions from consultative examiner, Dr. Lorensen; orthopedist, Dr. Baird and Physician's Assistant ("PA") McElheran; physical therapist ("PT") Alford-Tousley; and those providers involved with Plaintiff's numerous independent medical examinations pertaining to his Workers' Compensation claim. (T. 26-31.) Plaintiff argues that the ALJ failed to properly evaluate and weigh the conflicting medical opinions of record and failed to properly assess Plaintiff's RFC. (Dkt. No. 9, at 21-27.) The Court finds these arguments unpersuasive for the following reasons.

In May 2014, Dr. Lorensen observed some limitation of range of motion in the lumbar spine, negative straight leg raising testing bilaterally, physiologic and equal deep tendon reflexes in the upper and lower extremities, no sensory deficits, full strength in the upper and lower extremities, and intact hand and finger dexterity with full grip strength bilaterally. (T. 469.) A scan of the lumbosacral spine showed moderate degenerative changes at the L5-S1 level including disc space narrowing and Grade I anteriolisthesis and mild diffuse DDD osteophyte complex throughout the remainder of the thoracolumbar spine. (T. 471.) A scan of the cervical spine showed moderate-to-early-advanced degenerative changes at the C5-C6 and C6-C7 levels. (T. 472.) Dr. Lorensen diagnosed back pain, Dupuytren's contractures by history, and chronic

obstructive pulmonary disease. (T. 469-70.) She opined that there were moderate restrictions to bending, lifting, and reaching and no gross limitations to sitting, standing, walking, or handling small objects. (T. 470.) She also opined that Plaintiff should avoid smoke, dust, and other respiratory irritants. (*Id*.)

The ALJ indicated her RFC findings were generally supported by Dr. Lorensen's opinion and afforded it great weight because it was generally supported by the objective medical evidence. (T. 26, 29, 31.)[9] The ALJ also noted that Dr. Lorensen's opinion was entitled to greater weight than the treating source opinions because this opinion was more consistent with the record in its entirety, including Plaintiff's limited and conservative treatment modalities, indicating improved symptoms, and his engagement in physical activities consistent with a range of light work.[10] (T. 25-26, 31.) Plaintiff argues that Dr. Lorensen's opinion, particularly her opinion as to moderate limitations (e.g., on carrying) are vague and do not support the ALJ's RFC for light work. Given Dr. Lorensen's opinion that Plaintiff had **no** gross limitations as to sitting, standing, walking, or handling small objects, and the other evidence with respect to Plaintiff's ability to lift and carry,[11] the ALJ's RFC findings were supported by substantial

---

[9] As discussed above, other treatment records included objective evidence of improved symptoms and functionality with respect to plaintiff's hands and his lower back.

[10] As noted by the ALJ, Plaintiff has continued to perform a range of activities that require postural and manipulative demands including occasional driving, caring for his personal needs, using a computer, taking classes at a community college (which presumably entails writing or typing notes), preparing meals, cleaning, doing laundry, shopping, using a riding mower and snow blower, and taking public transportation. (T. 18, 29, 196, 227, 229, 463, 465, 468.)

[11] For example, the ALJ noted the July 2010 opinion of the independent medical examiner who determined Plaintiff was able to return to work with restrictions only in exerting up to 20 pounds of force occasionally in holding, lifting, pushing, or pulling. (T. 28, 642.)

evidence.[12]  (*See* T. 31.)  *See, e.g.*, *Lewis v. Colvin*, 548 F. App'x 675, 677-78 (2d Cir. 2013)

("ALJ's determination that [plaintiff] could perform 'light work' is supported by Dr. Datta's

assessment of "mild limitations for prolonged sitting, standing, and walking," and direction that

[plaintiff] should avoid 'heavy lifting, and carrying.' . . . It is further supported by evidence in

the record regarding [plaintiff's] daily activity"); *Gurney v. Colvin*, No. 14-CV-688S, 2016 WL

805405, at *3 (W.D.N.Y. Mar. 2, 2016) (finding no error in an RFC for light work where a

source opined moderate limitations in the abilities to perform repetitive heavy lifting, bending,

reaching, pushing, pulling, or carrying) (collecting cases making similar findings); *White v.

Comm'r of Soc. Sec.,* No. 8:17-CV-0109 (DJS), 2018 WL 2170288, at *7, 8 (N.D.N.Y. May 10,

2018), aff'd, No. 18-1481-cv (2d Cir. 2/7/2019) (consulting doctor's opinion that Plaintiff had

"moderate limitations in regard to standing, sitting, lifting, bending, squatting, climbing or

descending steps . . ." is not vague and is consistent with an RFC of modified light work).

In September 2014, Dr. Baird opined Plaintiff could occasionally lift up to 10 pounds,

probably frequently lift less than 10 pounds, probably stand less than two hours of a workday,

and probably sit less than six hours, but could perform fine manipulation and motor skills with

the upper extremities.  (T. 531-35.)  He indicated there was no reason to believe Plaintiff had had

any improvement since his last visit four years ago, when Dr. Baird opined that plaintiff had a

---

[12] State agency medical consultant Dr. P. Seitzman's July 2014 Physical RFC Assessment also supports the ALJ's RFC findings.  (T. 508-13.)  After reviewing the record evidence, Dr. Seitzman opined that Plaintiff could occasionally lift and/or carry up to 20 pounds; frequently lift and/or carry up to ten pounds; stand and/or walk about six hours in an eight-hour workday; sit about six hours in an eight-hour workday; and had unlimited pushing and/or pulling ability.  (T. 509.) The consulting doctor also opined that Plaintiff could occasionally climb, balance, stoop, kneel, crouch, and crawl.  (T. 510.)  The ALJ referenced P. Seitzman's opinion by exhibit number, but erroneously stated that he was a lay Single Decision Maker ("SDM") whose findings could not be considered on the merits by the ALJ.  (T. 31, referencing Ex. No. 21F). The last page of Dr. Seitzman's report clearly indicates he is a Medical Consultant, not an SDM, such that his opinion may be considered based on the authority cited above.

permanent impairment, for Workers' Compensation purposes.  (T. 529-31.)  In January 2015, PT

Alford-Tousley, completed a work capacity evaluation and indicated Plaintiff demonstrated the

ability to perform material handling tasks within the sedentary category with a maximum lift of

nine pounds, but he was unable to sit on a frequent basis, and therefore he did not fall within a

physical demand category.  (T. 572.)  She indicated an RFC for less than sedentary work with

postural, reaching, and environmental limitations, and also noted that Plaintiff could perform

contact feeling and frequent handling and fingering.  (T. 575-78.)  In May 2015, Dr. Baird

indicated agreement with Ms. Alford-Tousley's assessment.  (T. 580.)

The ALJ afforded little weight to the various opinions of Dr. Baird, PA McElheran, and

PT Alford-Tousley because these opinions were not supported by the scant chronically positive

clinical findings, and appeared to be based primarily on Plaintiff's self-reported limitations.  (T.

27, 28.)  The Functional Capacity Evaluation ("FCE") performed by PT Alford-Tousley and

adopted by Dr. Baird, reflected "testing" results only for Plaintiff's use of his hands.[13]  (T. 579.)

The ALJ noted that the FCE necessarily reflected Plaintiff's self-reported difficulties in

performing the particular physical functions, to the extent they were tested.  (T. 28.)  *See, e.g.,*

*Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (affirming the ALJ's decision not to assign

greater weight to a physical therapist's functional capacity evaluation, adopted by a treating

physician, because other than the PT's observation of the plaintiff lifting ten pounds,  the rest of

the physical therapist's findings were of uncertain origin, and it appeared that some, if not all of

them were obtained from plaintiff's own description of his abilities and activities); *Russitano v.*

*Colvin*, No. 6:14-CV-403 (TJM), 2015 WL 4496383, at *5-6 (N.D.N.Y. July 23, 2015) (rejecting

---

[13] Plaintiff testified that he recalled walking up and down stairs, lifting boxes, moving objects
with his hand, bending, and squatting during his session with the physical therapist.  (T. 49.)

the argument that a PT's FCE is objective medical evidence, as opposed to an opinion, because the plaintiff has subjective control over the level of effort put forth in performing tasks in the FCE); *Breland v. Comm'r of Soc. Sec.*, No. 5:15-CV-414 (GTS/WBC), 2016 WL 4491711, at *3 (N.D.N.Y. Aug. 1, 2016) (ALJ did not err in finding that a PT's FCE was not supported by diagnostic testing or explanations of methodology that would substantiate the conclusions, or in giving limited weight to the treating doctor who adopted the FCE without explaining her rationale) (Rep't-Rec.), *adopted*, 2016 WL 4487781 (N.D.N.Y. Aug. 25, 2016).

The ALJ indicated that Plaintiff's limited use of medication and conservative course of medical treatment for his spine complaints since the CPD failed to support greater exertional and non-exertional limitations. (T. 23.) As discussed above, the Court's review of the record supports this aspect of the ALJ's analysis. The ALJ also noted that Plaintiff had sought very limited alternative treatment modalities since the CPD, indicating a lack of uncontrolled symptoms or inadequate relief of symptoms. (T. 24.) Although there was some increase in degenerative changes indicated on laboratory testing, the ALJ noted that there was no significant decompensation in Plaintiff's condition since the CPD. (T. 26.)

The ALJ also noted a significant gap in treatment by Dr. Baird of nearly four years between December 2010 and September 2014, when Dr. Baird spent 15 minutes with Plaintiff before issuing a very limiting Medical Source Statement. (T. 23-24, 514-35, 601-08, 650-700.) Plaintiff argues this gap in treatment was based on him reaching maximum medical improvement, which is reflected in Dr. Baird's medical report of January 5, 2011. (T. 440-41.) However, the record appears to support the ALJ's conclusion that Plaintiff's spine complaints otherwise appeared to be adequately controlled with medications prescribed by his primary care

27

providers, as well as periodic use of other conservative measures, such as hot baths or at-home exercises. (T. 24, 234, 605.)

The ALJ noted that various earlier medical opinions and assessments concerning Plaintiff's physical functioning were provided by treating and examining sources in connection with his initial allowance and CPD, including Dr. Toor's opinion. (T. 31, 439-32.) The ALJ afforded no weight to these opinions in his RFC analysis because they predated Plaintiff's evaluation and treatment for his physical impairments beginning in June 2014, the period at issue before the ALJ. (T. 28, 31.) The ALJ also afforded little weight to the decisions rendered by the State of New York Workers' Compensation Board, noting that decisions rendered by other agencies are not binding on the Commissioner in determining claims for Social Security benefits, and that the finding of disability is an issue reserved to the Commissioner. (T. 27-28, citing SSR 06-3p.)[14]

The ALJ's RFC analysis indicates adequate consideration of the various medical opinions and the limitations identified therein. (T. 26-32.) The ALJ provided detailed explanations of her assessment of the opinions and the medical evidence related to them, which included reasons for the weight afforded to the various medical opinions. For example, the ALJ specifically noted that while she did not adopt all of Dr. Lorensen's findings with respect to the ability to bend, reach, or tolerate exposure to respiratory irritants, she afforded great weight to Dr. Lorensen's opinion because it was generally supported by the objective medical evidence. (T. 26, 28-29.)

---

[14] The standard for total or partial disability in a workers' compensation claim differs from the standard of disability set forth by the Social Security Act. *See Kara v. Apfel*, 11 F.Supp.2d 375, 380 (S.D.N.Y.1998) (noting a doctor's finding that plaintiff was totally disabled for workers' compensation claim was not binding on the Commissioner because of the differences in the definitions of disability); *Verginio v. Apfel*, No. 97-CV-456, 1998 WL 743706, at *7-8 (N.D.N.Y. Oct. 23, 1998) (finding plaintiff not precluded from performing work, despite doctor's opinions that he was partially disabled for purposes of workers' compensation claim).

The ALJ noted that PA McElheran's assessment could not be afforded controlling weight because the physician's assistant was not an acceptable medical source under the regulations. (T. 30.) The ALJ also noted that Dr. Baird's medical opinions could not be afforded controlling weight because they were not well-supported by the scant chronically positive clinical findings noted on repeat physical exams since the CPD including exams performed by Dr. Baird colleagues at North Country Orthopaedic Group, P.C. (T. 31, 515-31, 583, 593, 601-06.)

The Court finds that, contrary to Plaintiff's arguments, the ALJ did not substitute her own opinion for that of competent medical opinion or set her own expertise against that of Dr. Baird in concluding Plaintiff could perform light work. Rather, it was within the ALJ's purview to weigh the evidence of record (including the various medical opinions) and resolve any conflicts therein. *See Bliss v. Colvin*, 13-CV-1086, 2015 WL 457643, at *7 (N.D.N.Y. Feb. 3, 2015) ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such."); *accord Petell v. Comm'r of Soc. Sec.*, 12-CV-1596, 2014 WL 1123477, at *10 (N.D.N.Y. Mar. 21, 2014). The ALJ's decision indicates detailed consideration of the various medical opinions and Plaintiff's medical treatment, testimony, and subjective reports (including his reports of his activities of daily living). (T. 22-32.)

Here, the ALJ resolved conflicts between the various medical opinions by assigning the greatest weight to those opinions that she deemed most consistent with Plaintiff's overall treatment record and activities. In doing so, the ALJ appropriately evaluated the conflicting medical evidence, and made an RFC finding that was consistent with the overall record. *See Matta v. Astrue*, 508 F. App'x. 53, 56 (2d Cir. 2013) (although ALJ's conclusion did not perfectly correspond with any of the opinions of medical sources, ALJ was entitled to weigh all

of the evidence available to make an RFC finding that was consistent with the record as a whole).  On this record, the Court cannot conclude that "a reasonable factfinder would have to conclude" that plaintiff lacked the ability to perform light work consistent with the ALJ's RFC determination.  *Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 448 (2d Cir. 2012).  Remand is therefore not required on this basis.

**ACCORDINGLY**, it is

      **ORDERED** that the Commissioner's decision is **AFFIRMED**, and further

      **ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED,** and that judgment be entered for the **DEFENDANT.**


      Dated:  February 11, 2019
      Syracuse, New York

                                   Andrew T. Baxter
                                   U.S. Magistrate Judge